UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

```
IN RE:                          )
                                )   Chapter 7
GEORGE T. GOTT, JR. and         )
AMANDA D. GOTT,                 )
                                )   Bankruptcy No. 06-01453
    Debtors.                    )
_____ )
ELAINE L. CHAO, SECRETARY OF    )
LABOR, U.S. DEPARTMENT OF       )
LABOR,                          )
                                )   Adversary No. 06-30223
    Plaintiff,                  )
                                )
vs.                             )
                                )
GEORGE T. GOTT, JR.,            )
                                )
    Defendant.                  )
```

**ORDER RE: COMPLAINT TO ESTABLISH NONDISCHARGEABILITY
OF CERTAIN DEBT AS TO GEORGE T. GOTT, JR.**

This matter came before the undersigned for trial on February 28, 2008. Debtor/Defendant George Gott appeared with attorney Steven Klesner. Plaintiff Elaine L. Chao, Secretary of Labor, U.S. Department of Labor was represented by attorney Susan Willer. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

**STATEMENT OF THE CASE**

Plaintiff seeks to except debt from discharge for defalcation in a fiduciary capacity under § 523(a)(4). She asserts Debtor breached fiduciary duties under ERISA regarding his company's SIMPLE-IRA Plan. Plaintiff asserts Debtor failed to remit $10,722.70 in employee contributions to the IRA Plan accounts. Debtor asserts he was not a fiduciary and did not commit defalcation.

**FINDINGS OF FACT**

In 1998, Debtor George Gott purchased a company which manufactured and installed church steeples and baptismal fonts.

The company was known as GMP, Inc., d/b/a Wiedeman Church Products.  Debtor was President of the company.  In late 1999, the company gave its employees the opportunity to participate in a retirement plan.  Debtor testified that the employees chose MetLife as the administrator of the plan.  The Plan documents are set out in Exhibits 2 and 3.  Debtor signed both of these documents, which created and funded a SIMPLE-IRA Plan for GMP's employees effective January 2000.  The company agreed to provide funds to partially match the employees' contributions to the Plan.  Under the Plan, each employee had a separate IRA account with MetLife for which they received monthly statements.

In early 2005, Debtor's company began to have cash flow problems which eventually led to the business closing by the end of the year.  From May through October 2005, employee contributions to the IRA Plan totaling $10,722.70 were withheld from employee paychecks but not forwarded to MetLife.

Both Debtor and Jim Gray, a CPA and independent contractor working for the company as controller, testified that they had to prioritize what was getting paid in order to keep the business running.  During this time, payments would be made to cover essentials such as payroll, raw materials, utilities, insurance and telephone service.  Checks would be written for other payables but not sent out in order to avoid insufficient funds charges with the bank.  The checks for employee contributions from the SIMPLE-IRA Plan were held back until funds were available.  The last check the company sent to MetLife was for a May 2005 pay period, but it was not mailed until funds were available in October 2005.  Checks representing employee withholdings of $10,722.70 from May through October 2005 were never mailed.

Debtor testified that he did not know these checks were being held back until September 2005.  He was on the road constantly, delivering and installing products for the company.  The company's managers and Mr. Gray were making the day-to-day decisions for the company.  Debtor stated he was obviously aware of the cash flow problems and he trusted Mr. Gray and his managers to do the best they could.  He admitted he had an obligation to forward the employees' funds to MetLife and that the ultimate control over such payments was his.

In 2005, Debtor invested approximately $150,000 of his personal funds in the company to try to meet company expenses.  He testified he took out mortgages on his home and liquidated pretty much everything that had value in his life in order to keep the company going.  He estimates that the employees who made

the contributions which did not get paid to MetLife between May and October 2005 earned approximately $310,000 in take-home wages during that time. This was made possible by his efforts and personal investments in the company. Both Debtor and Mr. Gray testified that, in hindsight, it would have been prudent to shut down the business in May 2005. They believed, however, that the business could either prosper or be sold as a going concern. Debtor always intended that the company would make the proper payments to MetLife.

Plaintiff presented testimony of LeeAnn King, an investigator for the Department of Labor. She was assigned to research and investigate the deposits GMP failed to make after May 2005. She testified that the Plan does not have a named fiduciary, but Debtor is a functional or de facto fiduciary of the Plan. Ms. King stated that all plans have a fiduciary, which is a person who has discretionary control over the plan pursuant to § 3(21)(A) of the Employee Retirement Income Security Act of 1974 (ERISA). She noted that Debtor signed the two Plan documents, set up a special bank account to hold employee funds and the company's matching funds, and signed the checks which were sent to MetLife to fund the Plan. Mr. Gray also signed some of the checks.

Debtor testified that he did not believe he was a fiduciary of the Plan. He stated he did not know what ERISA was and did not know the Plan was ERISA-qualified until he did some research on it after the fact. Mr. Gray also testified that he was not familiar with ERISA and did not research whether Debtor or GMP had fiduciary duties related to the SIMPLE-IRA Plan.

## CONCLUSIONS OF LAW

The Bankruptcy Code provides that an individual debtor in a Chapter 7 case is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). To prevent the discharge of debt under section 523(a)(4), Plaintiff must establish the following two elements by a preponderance of the evidence: (1) a fiduciary relationship existed between Debtor and Plaintiff; and (2) Debtor committed fraud or defalcation in the course of that fiduciary relationship. In re Shahrokhi, 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001).

With regard to the first element, whether a relationship is a fiduciary relationship within the meaning of § 523(a)(4) is a question of federal law. In re Cochrane, 124 F.3d 978, 984 (8th Cir. 1997). The fiduciary relationship must be one arising from

3

an express or technical trust. In re Long, 774 F.2d 875, 878 (8th Cir. 1985). A mere contractual relationship is less than what is required to establish the existence of a fiduciary relationship. Werner v. Hofmann, 5 F.3d 1170, 1172 (8th Cir. 1993).

The Eighth Circuit has noted that a statute or other state law rule may create fiduciary status which is cognizable in bankruptcy proceedings. Long, 774 F.2d at 878. The 'technical' or 'express' trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law. In re Wheeler, 317 B.R. 783, 789 (Bankr. N.D. Iowa 2004); contra In re Bren, 284 B.R. 681, 687 (Bankr. D. Minn. 2002) (stating statutory trusts are neither express nor technical trusts in the absence of the parties' express intention); In re Engleman, 271 B.R. 366, 370 (Bankr. W.D. Mo. 2001) (same).

## ERISA FIDUCIARIES

The definition for a fiduciary under ERISA is found in 29 U.S.C. § 1002(21)(A) (also known as § 3(21)(A) of ERISA), which states, in pertinent part:

> (21)(A) . . . [A] person is a fiduciary with respect to a plan to the extent (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). ERISA imposes a fiduciary duty on individuals who are not named as fiduciaries only to the extent they exercise any discretionary authority over plan assets. Trustees of the Graphic Communications Int'l Union Midwest Local 1M Health & Welfare Plan v. Bjorkedal, 516 F.3d 719, 733 (8th Cir. 2008).

Once funds are withheld from employees' paychecks, the funds are plan assets. Id. (contrasting employer-owed contributions with employee paycheck withholdings); see also Central Ill. Carpenters Health & Welfare Trust Fund v. S & S Fashion Floors, Inc., 516 F. Supp.2d 931, 937 (C.D. Ill. 2007) (stating plan assets include amounts that have been withheld by the employer from employee pay but not paid over to the plan); 29 C.F.R.

4

§ 2510.3-102 (including employee withholdings in definition of "plan assets"). "Parties who possess and use their power to write checks on a plan account exercise control over plan assets." Briscoe v. Fine, 444 F.3d 478, 493 (6th Cir. 2006). For example, in LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir. 1997), one of two brothers who were sole shareholders of a corporation was found to be an ERISA fiduciary because he signed checks on the company's account and decided which creditors to pay and when. The other brother was not a fiduciary because, although he had power to write checks, he had not done so. Id. at 40-41. Likewise, in Bannistor v. Ullman, 287 F.3d 394, 403-04 (5th Cir. 2002), individuals who disposed of withheld employee contributions by delivering them to a creditor were considered ERISA fiduciaries.

## ERISA AND § 523(A)(4)

The Eighth Circuit Court of Appeals considered whether an ERISA fiduciary is necessarily also a fiduciary for the purposes of § 523(a)(4) in Hunter v. Philpott, 373 F.3d 873, 875 (8th Cir. 2004). It noted that the Ninth Circuit held that an ERISA fiduciary is ipso facto a fiduciary for purposes of § 523(a)(4) in In re Hemmeter, 242 F.3d 1186 (9th Cir. 2001). The Eighth Circuit, however, stated: "We are not satisfied that the simple determination that an individual is an ERISA fiduciary is enough to satisfy the requirements of § 523(a)(4)." Hunter, 373 F.3d at 875. Instead, the court looked to the substance of the transaction in deciding whether a person is a fiduciary. Id. at 876.

In Hunter, the debtor's company had failed to pay employer contributions to union funds as required under a collective bargaining agreement. Id. at 875. Some of the factors the court considered were: 1) the debtor was not legally obligated to hold any particular property for the union funds; 2) the debtor did not sign the collective bargaining agreement or guarantee his company's performance under the agreement; 3) the ERISA plans pre-existed the signing of the agreement; and 4) neither the debtor nor his company were in any position to act solely for the benefit of the funds. Id. at 876. The court held that the relationship between the debtor individually and the funds was basically contractual, not fiduciary, in nature. Id. at 877.

Other circuits courts have subsequently considered whether a debtor is a § 523(a)(4) fiduciary in the context of ERISA-based debts. The court in In re Bucci, 493 F.3d 635, 641-42 (6th Cir. 2007), agreed with Hunter and noted that the definition of fiduciary under § 523(a)(4) did not match the definition of an

5

ERISA fiduciary.  It concluded that, as the debtor had only a contractual obligation to pay employer contributions to union funds, the defalcation provision of § 523(a)(4) did not apply. Id. at 643.  In In re Luna, 406 F.3d 1192, 1198 n.2 (10th Cir. 2005), the court noted it expressed no opinion whether fiduciary status under ERISA satisfies § 523(a)(4).  It held that "an employer cannot become an ERISA fiduciary merely because it breaches its contractual obligations to a fund."  Id. at 1203. The debtors in Luna had failed to make employer contributions to union funds.  Id. at 1197.  The court concluded that it was "not inclined to hold that the officers of a company who contract with an ERISA-covered fund automatically become fiduciaries under the Bankruptcy Code."  Id. at 1208.

The Fourth Circuit in Phelps v. C.T. Enterprises, Inc., 394 F.3d 213, 219 (4th Cir. 2005), noted that fiduciary duty under ERISA is not an all-or-nothing concept.  "Where, for example, an employer is entrusted with employee funds for remittance to a claims administrator, along with any employer contributions, the employer is acting in a fiduciary capacity under ERISA."  Id. The court in In re O'Quinn, 374 B.R. 171, 182 (Bankr. M.D.N.C. 2007) (disagreeing with Hunter), cited this language in holding that fiduciary status under ERISA may give rise to the necessary fiduciary status under § 523(a)(4) for nondischargeability purposes.  The debtor in O'Quinn had failed to apply amounts deducted from an employee's paycheck toward ERISA plan insurance premiums, among other things.  Id. at 175.

In the cases which have applied § 523(a)(4) to ERISA-based obligations, a contrast exists between 1) debts for employer contributions and 2) a failure to properly apply employee contributions or invest assets.  See In re Popovich, 359 B.R. 799, 803 (Bankr. D. Colo. 2006).  The courts in Hunter, Luna, and Bucci, which failed to find fiduciary status, all considered debts arising from unpaid employer contributions.  See also In re Halpin, 370 B.R. 45, 50 (N.D.N.Y. 2007) (concluding the debtor did not bear fiduciary responsibilities with regard to unpaid employer contributions); Popovich, 359 B.R. at 806 (finding failure to make employer contributions was a breach of contract, but not a breach of any fiduciary duty); In re Tsikouris, 340 B.R. 604, 617 (Bankr. N.D. Ind. 2006) (noting promise to pay employer's component of plan contributions creates just another debt); In re Engleman, 271 B.R. 366, 370 (Bankr. W.D. Mo. 2001) (finding no fiduciary relationship from mere duty to pay employer contributions to funds).

In contrast, in the Ninth Circuit case , Hemmeter, 242 F.3d at 1188, which found that an ERISA fiduciary meets the

6

requirement of fiduciary status under § 523(a)(4), the plaintiffs alleged the debtor improperly invested assets of an ERISA plan. See also In re Goodwin, 355 B.R. 337, 344 (Bankr. M.D. Fla. 2006) (finding the debtor failed to diversify and account for assets of ERISA plan); In re Duncan, 331 B.R. 70, 85 (Bankr. E.D.N.Y. 2005) (concluding debtor functioned as fiduciary and caused ERISA plan to pay sham entities).

More relevantly to this case, many courts have found fiduciary status under § 523(a)(4) where a debtor misappropriated or improperly applied ERISA funds withheld from employee paychecks. Eavenson v. Ramey, 253 B.R. 160, 166 (N.D. Ga. 1999) (finding debtor used employee contributions as general funds); In re Johnson, 2007 WL 646376, *5 (S.D. Tex. Feb. 26, 2007) (finding debtor permitted employee contributions to be commingled with corporate accounts); O'Quinn, 374 B.R. at 175 (finding debtor failed to apply employee withholdings to fund insurance premiums); In re Weston, 307 B.R. 340, 343 (Bankr. D.N.H. 2004) (finding debtor failed to adequately fund health plan with employee contributions); In re Gunter, 304 B.R. 458, 462 (finding debtor diverted employee withholdings to pay other business expenses); In re Coleman, 231 B.R. 393, 396 (Bankr. S.D. Ga. 1999) (finding debtor was fiduciary with respect to employee contributions to ERISA funds withheld from employee paychecks).

**DEFALCATION**

A finding of "defalcation" under § 523(a)(4) does not require evidence of intentional wrongdoing. In re Cochrane, 125 F.3d 978, 984 (8th Cir. 1997).

> Defalcation is defined as the "misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds." Under section 523(a)(4), defalcation "includes the innocent default of a fiduciary who fails to account fully for money received." . . . An individual may be liable for defalcation without having the intent to defraud.

Id. (citations omitted). Defalcation is construed broadly and evaluated by an objective criteria. In re Cook, 263 B.R. 249, 256 (Bankr. N.D. Iowa 2001). "[I]gnorance of the fiduciary responsibilities is not an excuse to defalcation if that ignorance leads to a fiduciary default." In re Wright, 266 B.R. 848, 852 (Bankr. E.D. Ark. 2001). Debtors are charged with the knowledge of a fiduciary duty and a claim of ignorance of the duty is an inadequate defense to § 523(a)(4). In re Burgholzer,

7

370 B.R. 58, 63-64 (Bankr. W.D.N.Y. 2007) (rejecting debtor's claim that defalcation in § 523(a)(4) requires actual knowledge that one is a fiduciary); In re Hanes, 214 B.R. 786, 813 (E.D. Va. 1997) ; In re Menendez, 107 B.R. 789, 793 (Bankr. S.D. Fla. 1989) (finding debtors breached fiduciary duty created by Florida statute). "Ignorance of the law should be no excuse to defalcation." In re Richardson, 178 B.R. 19, 29 (Bankr. D.D.C. 1995).

**ANALYSIS**

Based on the foregoing, the Court concludes that Debtor acted as a fiduciary under ERISA with regard to the funds withheld from employee paychecks to be paid to the IRA Plan. The employee's withheld funds were assets of the IRA Plan. Debtor set up the separate bank account to hold these funds and signed most of the checks sent to MetLife for the IRA Plan. Thus, he exercised discretionary control of Plan assets and is a fiduciary under § 3(21)(A) of ERISA.

Being a ERISA fiduciary, however, does not necessarily make Debtor a fiduciary under § 523(a)(4). The Court must look at the substance of the transaction to determine whether Plaintiff has met her burden to prove the first element of § 523(a)(4). Debtor's company, GMP, became subject to the obligations imposed by ERISA when the SIMPLE-IRA Plan was created. Debtor, as President of GMP, signed the Plan agreements. Debtor is the only individual identified in the record as having ultimate control of company decisions. He was responsible for decisions made in the day-to-day operations of the GMP, even when he was distracted by cash flow difficulties and the need to make deliveries out of town, and even when he delegated that responsibility to managers at the company and Mr. Gray. Debtor, after consulting with Mr. Gray, set up the separate bank account to hold the Plan funds until they were forwarded to MetLife. He signed a majority of the checks on that account. The Court concludes, in agreement with many cases considering similar circumstances, that Debtor is a fiduciary under § 523(a)(4) based on his control over the Plan funds withheld from employee paychecks.

Having found Debtor was a fiduciary under § 523(a)(4), the Court must next consider whether he committed fraud or defalcation in the exercise of his fiduciary duties. There is no intimation of fraud in the record. Debtor has failed, however, to account for the funds withheld from employee paychecks in the total amount of $10,722.70 and not forwarded to MetLife. Debtor admits that the funds were used in the day-to-day operations of

GMP rather than set aside for the benefit of the employees. As such, they were misappropriated.

Debtor asserts that he was not aware that he was a fiduciary under ERISA as regards the employee withholdings. He also notes that the employees earned more in wages while GMP remained in business than they lost in Plan withholdings. The Court does not question Debtor's devotion to keeping the company in business for the benefit of his customers and employees. Debtor is not accused of stealing employee funds or purposefully taking employee withholdings for his own personal benefit. This does not absolve him, however, from his obligations to his employees regarding the funds withheld from their paychecks. Debtor made decisions regarding the use of funds which did not belong to him or his company. The funds withheld from employee paychecks belonged to the employees, but Debtor gave them no say in how they would be used. The decision to use these funds was not Debtor's to make – he should have give the employees the option to discontinue the IRA Plan if GMP was no longer able to fund it.

Debtor held the funds in trust for the benefit of the employees. He had no right to use them to further the operations of GMP. When he failed to make sure the employees' withheld funds were properly being forwarded to MetLife, he committed defalcation in a fiduciary relationship under § 523(a)(4). The resulting debt of $10,722.70 is therefore excepted from Debtor's bankruptcy discharge.

**WHEREFORE,** the Complaint to Establish Nondischargeability of Certain Debt as to George T. Gott, Jr. is GRANTED.

**FURTHER,** the $10,722.70 debt of unpaid employee participant withholdings to the participants of the SIMPLE IRA Plan is excepted from discharge under § 523(a)(4).

**FURTHER,** Plaintiff is awarded the costs of this action.

**FURTHER,** judgment shall enter accordingly.

DATED AND ENTERED: April 14, 2008

_____
PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE